# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>                  Respondent-Plaintiff,<br><br>v.<br><br>Raymond K. Walker,<br><br>                  Petitioner-Defendant. | Criminal No. 16-33(1) (DWF/LIB)<br>Civil No. 18-499 (DWF)<br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

---

Raymond K. Walker, Petitioner-Defendant, *Pro Se*.

Bradley M. Endicott and Deidre Y. Aanstad, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

---

## INTRODUCTION

This matter is before the Court on Petitioner-Defendant Raymond K. Walker's ("Petitioner-Defendant") *pro se* motion under 28 U.S.C. § 2255 to vacate or set aside his sentence and conviction (Doc. No. 139), *pro se* motion for summary judgment (Doc. No. 157), and his self-styled *pro se* "motion to correct misapprehension of facts" within his initial § 2255 motion (Doc. No. 171). The United States of America (the "Government") opposes Petitioner-Defendant's motions. (Doc. Nos. 160, 168, 173.)

Specifically, Petitioner-Defendant alleges that due to the ineffective assistance of his counsel during both the pretrial and sentencing phases of proceedings in his criminal matter, his guilty plea was not knowing and voluntary and the sentence imposed by this

Court was excessive.  Petitioner-Defendant first requests that his guilty plea be vacated, then requests that his case be remanded for resentencing.  The Government opposes any order to disturb the judgment entered on the grounds that Petitioner-Defendant knowingly and voluntarily pled guilty, received adequate representation throughout the proceedings, and was sentenced in consideration of accurate information.  The Government further argues that no evidentiary hearing is warranted because the record conclusively supports the judgment as entered.

For the reasons set forth below, the Court denies Petitioner-Defendant's motions.

## BACKGROUND

Pursuant to a written plea agreement (Doc. No. 78-1 ("Plea Agreement")), on June 21, 2016, Petitioner-Defendant entered a plea of guilty to Count 1 of a five-count indictment  (Doc. No. 1).  Count 1 charged Petitioner-Defendant with Conspiracy to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  A Presentence Investigation Report ("PSR") was ordered at the change of plea hearing (*see* Doc. No. 150 ("Plea Hearing") at 26), and each party filed a sentencing memorandum (Doc. Nos. 129, 130).  The PSR included calculations under the United States Sentencing Guidelines (the "Guidelines") totaling an adjusted offense level of 32 and a criminal history category ("CHC") of VI, which resulted in an advisory guidelines range of 210 to 262 months' imprisonment.  (Doc. No. 114 ("PSR") ¶¶ 27, 72, 129.)  Neither Petitioner-

Defendant nor the Government objected to or proposed any amendments to the PSR. (*Id.* at 34.)

Petitioner-Defendant was sentenced on February 21, 2017. At sentencing, this Court adopted the PSR with one change: a three-level reduction for acceptance of responsibility was applied. (Doc. No. 133 ("Statement of Reasons") Sec. I.) The Court departed below the guidelines range and granted a variance, sentencing Petitioner-Defendant to 132 months imprisonment to be followed by 5 years of supervised release (Statement of Reasons Secs. IV-VI; Doc. No. 132). Counts 2 through 5 of the indictment were dismissed on the motion of the Government. (Doc. No. 132.)

Petitioner-Defendant did not file an appeal of his conviction or sentence. He timely filed this § 2255 motion and supporting memorandum of law on February 20, 2018 (Doc. Nos. 139, 140) which the Government opposed (Doc. No. 168).

Before filing its response, the Government requested an order from this Court confirming that Petitioner-Defendant waived the attorney-client privilege with respect to his allegations of ineffective assistance of counsel. (Doc. No. 145.) This request was granted and Petitioner-Defendant's former attorney, Murad Mohammad ("Attorney Mohammad") was granted leave to file an affidavit in defense of the claims made by Petitioner-Defendant about his performance. (Doc. No. 146.) Attorney Mohammad did not file an affidavit, contributing to delays in the Government's response. (*See* Doc. Nos. 144, 151, 155.) Finally, this Court ordered Attorney Mohammad to contact the

Government regarding this matter.  (Doc. No. 156.)  Copies of the order mailed to Attorney Mohammad were returned as undeliverable after two separate attempts.  (*See* Docket entry dated August 27, 2018; Doc. No. 161.)  Attorney Mohammad has failed to respond to Petitioner-Defendant's motion.

Petitioner-Defendant filed a *pro se* motion for summary judgment on the grounds that the Government failed to respond to his initial motion.  (Doc. No. 157.)  This Court ordered the Government to respond by September 4, 2018 (Doc. No. 159), and on September 4, 2018 the Government filed its response (Doc. No. 160).  Petitioner-Defendant additionally filed a reply to the Government's response reiterating his original allegations (Doc. No. 171), to which the Government filed its own additional response (Doc. No. 173).  Petitioner-Defendant had the last word, repeating his allegations and noting Attorney Mohammad's recent disbarment.  (Doc. No. 174.)

## I.     Plea Agreement

On June 21, 2016, Petitioner-Defendant and the Government entered into the Plea Agreement.  First, the parties agreed that Petitioner-Defendant would plead guilty to Count 1 of the indictment filed in this case with the understanding that the Government would move to dismiss the remaining counts at sentencing.  (Plea Agreement ¶ 1.)  The parties acknowledged that Count 1 charged a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, carrying a mandatory minimum sentence of ten years

imprisonment.[1]  (*Id.* ¶¶ 1, 4.)  The parties agreed to the factual basis for the plea, and further, the parties agreed that if they were to proceed to trial, the Government would prove the facts supporting the plea beyond a reasonable doubt.  (*Id.* ¶ 2.)

The Plea Agreement addressed the Guidelines and relevant statutes to be considered at sentencing, anticipating a total offense level of 29 and a CHC of III, which resulted in a Guidelines range of 108 to 135 months of imprisonment that was narrowed by the mandatory minimum to a range of 120 to 135 months.  (*Id.* ¶ 6(f).)  The parties agreed that "[n]othing in this Plea Agreement should be construed to limit the Parties from presenting any and all relevant evidence to the Court at sentencing."  (*Id.*)  They went on to stipulate to guideline calculations factoring in a base offense level of 30 with no applicable specific offense characteristics, a 2-level increase in the offense level due to Petitioner-Defendant's role in the offense, and agreement from the Government to recommend a 3-level reduction for acceptance of responsibility conditioned upon Petitioner-Defendant's agreement to testify truthfully at his change of plea hearing, cooperate with the Probation Office in its pre-sentence investigation, and commit no further acts inconsistent with such acceptance.  (*Id.* ¶ 6(a)-(d).)

The parties agreed that they believed Petitioner-Defendant's properly calculated criminal history score would place him in CHC III, but emphasized that this was *not* a

---

[1]     The sentencing requirements of the current version of 21 U.S.C. § 841(b)(1)(A)(i) are unchanged from the version that was in effect from August 3, 2010 to December 20, 2018 and thus were applicable during the entirety of the proceedings in question.

stipulation, and further, they agreed that the actual criminal history "will be determined by the Court" and that any determination other than CHC III "shall not be a basis for either party to withdraw from this Plea Agreement." (*Id.* ¶ 6(e).)  Both parties also reserved their rights to move for departures from the applicable Guidelines and to argue for a sentence outside them, as well as their rights to oppose such motions made by the opposing party.  (*Id.* ¶ 6(i).)

The parties stated their understanding that while they were bound by their stipulations with respect to Guidelines calculations, the Court was not.  (*Id.* ¶ 7.)  The parties agreed that the Court "may make its own determination regarding the applicable guideline factors and the applicable CHC," and "may also depart from the applicable Guidelines."  (*Id.*)  Even if the Court determined that the applicable Guidelines calculations or Petitioner-Defendant's CHC were different from those calculated by the parties, they agreed that they could not withdraw from the Plea Agreement and that this Court's determinations would govern the sentence imposed.  (*Id.*)  Petitioner-Defendant waived his right to appeal his sentence if it imposed 135 or fewer months of imprisonment.  (*Id.* ¶ 9.)

## II.     Change of Plea Hearing

Petitioner-Defendant appeared at a change of plea hearing before this Court to enter his guilty plea on the same day he signed the Plea Agreement.  (Doc. No. 150 ("Plea Hearing").)  After swearing an oath to tell the truth, Petitioner-Defendant affirmed

that he had had enough time to consult with his lawyer, Attorney Mohammad. (Plea Hearing at 4.) Petitioner-Defendant also stated that he was satisfied with the services and representation provided by Attorney Mohammad up to that point. (*Id.*)

Petitioner-Defendant's own sworn statements confirmed that he understood all key aspects of the Plea Agreement. When asked by the Court, he answered that he signed the final page of the Plea Agreement voluntarily with no inducement other than what was contained in the writing itself. (*Id.* at 5-6.) Petitioner-Defendant stated he understood that with his plea, he would be sentenced to a minimum of ten years' imprisonment and a maximum of life in prison. (*Id.* at 7.) The Court read from page 4 of the Plea Agreement and inquired of Petitioner-Defendant whether he understood that subparagraph c of the section detailing the Guidelines calculations included an agreement between the parties that a 2-level increase for his role in the offense would apply. (*Id.* at 10.) Petitioner-Defendant answered that he understood. (*Id.*) As this Court continued to review the Plea Agreement with him in detail, Petitioner-Defendant stated he understood it provided that the Government would recommend a 3-level reduction for acceptance of responsibility (*id.* at 11), that it was the parties' belief that he would be found to be in CHC III but if he were to be found by Probation to fall under CHC V or VI, neither party could back out of the Plea Agreement (*id.* at 12-13), and that by entering the Plea Agreement, Petitioner-Defendant was waiving his right to appeal his sentence unless it was for a period of imprisonment greater than 135 months (*id.* at 16).

Before Petitioner-Defendant entered his guilty plea, this Court asked him if there was any part or term of the Plea Agreement, whether previously mentioned or not, that he wanted to ask about. (*Id.* at 18.) Petitioner-Defendant answered, "No, sir." (*Id.*) The Court went on to ask if Petitioner-Defendant understood the trial rights he was giving up by entering the Plea Agreement and pleading guilty, to which he answered in the affirmative, stating that he understood the burden of proving Petitioner-Defendant's guilt would have been on the Government had he gone to trial. (*Id.* at 19.) Moreover, as this Court confirmed twice, Petitioner-Defendant understood that the Government's burden was to prove his guilt "beyond a reasonable doubt." (*Id.*) Once more before entering his plea, this Court asked Petitioner-Defendant if he understood the constitutional rights he was waiving by going forward with his guilty plea, whether raised by the Court or not, and again this Court gave him an opportunity to ask any questions he had about any of his rights as discussed or anything else that had not been mentioned. (*Id.* at 22-23.) Again, Petitioner-Defendant answered that he understood and had no questions. (*Id.*)

Petitioner-Defendant did speak with his counsel off the record at one point during the hearing. (*Id.* at 24.) After Petitioner-Defendant stated that he was guilty of Count 1 but before the factual basis for the charges was fully entered, Attorney Mohammad asked for a moment to confer with his client. (*Id.*) The proceedings paused, and Petitioner-Defendant told this Court that he had no questions and was ready to proceed.

(*Id.*)  Petitioner-Defendant went on to affirm that he knowingly and voluntarily violated the law, and his plea was accepted and recorded.  (*Id.* at 25-26.)

### III.    Presentence Investigation Report

At the change of plea hearing, this Court ordered the United States Probation Department ("Probation") to prepare a presentence investigation report ("PSR").  (*Id.* at 26.)  The PSR included a summary of the Plea Agreement, noting that the parties agreed to a base offense level of 30 with no applicable specific offense characteristics, plus a 2-level increase for Petitioner-Defendant's Aggravated Role in the offense.  (Doc. No. 114 ("PSR") ¶¶ 4, 22-23.)  The PSR further noted that the Plea Agreement anticipated a 3-level reduction in the offense level for acceptance of responsibility and a CHC of III, resulting in a guidelines range of 108-135 months of imprisonment but bound by the mandatory minimum of 120 months' imprisonment.  (*Id.*)

The PSR discussed the application of the Guidelines, including how to factor in the 3-level offense level reduction which would only apply if Petitioner-Defendant provided a statement to clearly demonstrate acceptance of responsibility.  (*Id.* ¶ 20.)  Part D of the PSR, Sentencing Options, outlined the mandatory minimum and noted that per the parties' Plea Agreement, Counts 2 through 5 would be dismissed, but that conviction on additional counts would not have affected the Guidelines range because they would have been grouped in the computations.  (*Id.* ¶¶ 128, 130.)

As documented in its attached addendum, the PSR was disclosed to counsel for both Petitioner-Defendant and the Government on December 13, 2016, and in compliance with local and federal rules, the parties were provided 14 days to object to its findings.  (PSR at 34; *see, e.g., United States v. Lindsey*, 827 F.3d 733, 735 (8th Cir. 2016).)  Neither party objected or proposed any amendments.  (PSR at 34.)

## IV.  Petitioner-Defendant's Sentencing Memorandum

Petitioner-Defendant submitted, through counsel, a sentencing memorandum requesting a term of imprisonment of 120 months.  (Doc. No. 129 ("Sentencing Mem.") at 1.)  Petitioner-Defendant's position pleading noted the parties' agreement "that the base offense level is 30 and no specific offense characteristics are applicable."  (*Id.*)  It further noted that with the agreed-to 2-level increase for Petitioner-Defendant's role and the 3-level reduction for acceptance of responsibility, if the CHC was III, the Guidelines sentencing range would be 108-135 months.  (*Id.*)

Petitioner-Defendant addressed the criminal history score as calculated in the PSR, taking issue with the inclusion of certain prior offenses and arguing for a CHC of III rather than VI.  (*Id.* at 1-2.)  Petitioner-Defendant noted that the PSR's calculations would result in a Guidelines range of 210-262 months, but requested that the Court nevertheless impose a sentence of 120 months' imprisonment in consideration of other sentencing factors.  (*Id.* at 2-3.)

**V. Sentencing Hearing**

Petitioner-Defendant appeared with counsel for sentencing on February 21, 2017. (Doc. No. 148 ("Sentencing Hearing").)  At the outset, the Court noted that both parties submitted memoranda that reflected their understanding that Petitioner-Defendant's adjusted offense level was 29 after factoring in acceptance of responsibility, but his minimum sentence would be 10 years' imprisonment.  (Sentencing Hearing at 2.)  The Court also noted that Attorney Mohammad had advanced the argument that a CHC of VI was "an overstatement, so there should be a departure."  (*Id.* at 3.)

This Court explained its calculations, starting with the numbers provided by the PSR.  (*Id.*)  Petitioner-Defendant accepted responsibility as part of his allocution, stating that he "hurt a lot of people in the community" by selling what he agreed was a "large amount" of heroin.  (*Id.* at 7.)  Petitioner-Defendant further admitted that he worked as an organizer or leader, employing other people to help him deliver heroin.  (*Id.*)  Following these statements, the Court noted that the adjusted offense level was 29, which when combined with the CHC of VI resulted in a Guidelines range of 151 to 188 months.  (*Id.* at 13.)  The Court then asked Attorney Mohammad if he wanted to be heard on the issue of the criminal history score.  (*Id.*)

Attorney Mohammad argued that the PSR improperly included prior convictions for non-violent offenses and that points added for committing an offense while on probation should be discounted because at the time of the offense in question,

11

Petitioner-Defendant "was almost done with probation." (*Id.* at 14-15.) Attorney Mohammad requested that his client be categorized at level III instead of VI, which would result in a sentencing range of 108 to 135 months, and further requested that the Court impose the minimum sentence of 120 months' imprisonment. (*Id.* at 15.) Counsel for the Government stated its position that the calculations were accurate. (*Id.* at 15-16.)

After offering Attorney Mohammad the opportunity to rebut the Government's statement, the Court found that the CHC was accurately computed, but because it "overstate[d] the seriousness" of the criminal history a downward departure to Category V was appropriate. (*Id.* at 17.) This Court went on to explain that whether the CHC changed to III as Petitioner-Defendant requested, remained at VI as the Government argued was appropriate, or was factored in at Category V, "under what are called the 3553(a) factors, I would likely end up at the same sentence in the end." (*Id.*) According to the Court's calculations, the Guidelines sentence would be 140 to 175 months of imprisonment. (*Id.*)

Attorney Mohammad reiterated the arguments of Petitioner-Defendant's sentencing memo, again requesting a departure down to 120 months' imprisonment. (*Id.* at 18.) The Government acknowledged the adjusted Guidelines range as found by the Court and requested a sentence within that range. (*Id.* at 20-22.) Attorney Mohammad declined rebuttal. (*Id.* at 22.)

Before pronouncing Petitioner-Defendant's sentence, this Court noted that the

Guidelines are advisory and that the Court did not have the authority to impose a term of

imprisonment less than 120 months. (*Id.* at 24.) The Court explained its consideration of

the required sentencing factors in light of Petitioner-Defendant's particular conduct and

individual characteristics, and concluded that "anything less than 132 months [of

imprisonment] would not promote respect for the law." (*Id.* at 27.)

## VI. Statement of Reasons

The Court clearly set forth its analysis in the Statement of Reasons (Doc. No. 133

("Statement of Reasons")) filed at the time of the Sentencing Judgment (Doc. No. 132).

The sentence imposed reflected the application of a 3-level reduction for acceptance of

responsibility and the mandatory minimum term of imprisonment. (Statement of Reasons

Secs. I(B)(2), II(A).) The Court departed downward from the Guidelines range and

granted a variance. (*Id.* Secs. IV-VI.)

## VII. Attorney Mohammad's Disbarment

Petitioner-Defendant retained Attorney Mohammad as his counsel and was

represented by Attorney Mohammad from his initial appearance on February 23, 2016

through sentencing on February 21, 2017. (Doc. Nos. 8, 12.)

The Minnesota Director of the Office of Lawyers Professional Responsibility filed

a petition for disciplinary action against Attorney Mohammad alleging professional

misconduct on December 1, 2017, and he was suspended from the practice of law by the

Minnesota Supreme Court on August 31, 2018. *In re Disciplinary Action against Mohammad*, 916 N.W.2d 868 (Minn. 2018). Following investigations into matters involving 11 clients, Attorney Mohammad was found to have committed misconduct including misappropriation of funds and other financial misconduct, failing to diligently handle client matters, failing to communicate with clients, failing to appear in court, and engaging in representation despite a conflict of interest. *In re Disciplinary Action Against Mohammad*, 923 N.W.2d 1 (Minn. 2019). Attorney Mohammad stipulated to these findings and, on February 11, 2019, he was disbarred. (*Id.*) A careful review of the materials related to Attorney Mohammad's disciplinary proceedings shows that Petitioner-Defendant's case was not among those investigated, so no findings were made concerning Attorney Mohammad's performance as relates to the matters before this Court.[2]

The thrust of the parties' arguments has been consistent in all motions. Petitioner-Defendant maintains that but for the ineffective assistance provided by his counsel, Attorney Mohammad, he would have chosen to exercise his right to a trial, entered into a more favorable plea agreement, or received a more lenient sentence. The Government maintains that the Guidelines calculations used at sentencing were correct

---

[2]     The affected clients are referred to by their initials, none of which matched any permutation of Petitioner-Defendant's name. The public documents related to Attorney Mohammad's disciplinary proceedings are available at http://lprb.mncourts.gov/LawyerSearch/casedocs/MOHAMMAD-A17-1920-02112019.pdf.

and that the record conclusively shows that Petitioner-Defendant's participation throughout these proceedings was knowing and voluntary, meaning that the Plea Agreement is binding and Petitioner-Defendant is not entitled to any relief.

## DISCUSSION

### I.    Legal Standards

#### A.    Summary Judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Federal Rules of Civil Procedure, including 56(a), apply to habeas proceedings insofar as they do not conflict with the federal rules governing habeas

proceedings. Fed. R. Civ. P. 81(a)(4)(A); Rules Governing § 2255 Proceedings, Rule 12, 28 U.S.C.A. foll. § 2255. As the Government correctly noted in its opposition, "motions for summary judgment are not proper in habeas cases." *See Ehlers v. Wilson*, No. 13-CV-2555, 2015 WL 4920294, at *5 (D. Minn. Aug. 11, 2015), aff'd, 667 F. App'x 572 (8th Cir. 2016). Even if this Court were to analyze the material facts by the summary judgment standard, it would find that a genuine dispute exists in this case.

### B.    Section 2255

Title 28, United States Code, Section 2255, provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence." In making such a motion, a § 2255 action requires a prisoner to show that he or she is entitled to such extraordinary relief because:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a). If the court finds such a defect in sentencing, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A § 2255 request for relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

16

The scope of the remedy provided under Section 2255 "does not encompass all claimed errors in conviction and sentencing." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotations omitted)). As elaborated below, Petitioner-Defendant's claims do not describe any fundamental constitutional, jurisdictional, or other severe defect in his sentence.

## II. Sentencing Guidelines

The United States Sentencing Commission was tasked by Congress with formulating the Guidelines used by courts to determine appropriate terms and conditions for sentences. 28 U.S.C. § 994. Ordinary questions of sentencing guideline interpretation do not rise to the level of a "miscarriage of justice" and may not be relitigated under a Section 2255 claim. *Id.* Here, there was no misinterpretation, let alone such a grievous error as to justify vacating Petitioner-Defendant's sentence.

Petitioner-Defendant repeatedly asserts that his counsel provided ineffective assistance by failing to recognize that the analyses of the Guidelines calculations in the Plea Agreement and PSR erroneously stated no specific offense characteristics applied while still including the Aggravating Role enhancement. (*See*, *e.g.*, Doc. No. 140 at 3-5.) He goes on to accuse the Government of more nefarious behavior, alleging that it "was playing fast-and-loose" and breached the Plea Agreement. (Doc. No. 140 at 6.) While confusion over the proper application of the Guidelines is understandable, especially in

consideration of the many cross-references within the Guidelines, Petitioner-Defendant's concerns are misplaced.

The 2016 Guidelines were in effect from November 1, 2016 to October 31, 2018, thus encompassing the period in question. USSG (Nov. 2016). Petitioner-Defendant misconstrues various sections and amendments in his submissions, but the applicable provisions are unchanged from the previous version to the current Guidelines. Chapter Two, entitled "Offense Conduct," is the source for the base offense level to be used as well as modifications to that offense level for specific offense characteristics. Chapter Three, "Adjustments," is the source for Part B- Role in the Offense, which includes increases for defendants who played aggravating roles. USSG § 3B1.1.

The U.S. Sentencing Commission provides references to aid in the use of the Guidelines. As the Commission instructs, a federal probation officer prepares initial PSR calculations by first determining which Chapter Two offense Guideline applies. U.S. Sent'g Comm'n, *Federal Sentencing: The Basics*, 13 (2018).[3] The next step is to calculate the Chapter Two offense level by finding the appropriate base level, then determining whether any specific offense characteristics apply. (*Id.* at 16.) After this is completed, Chapter Three adjustments are applied, such as an upward adjustment pursuant to USSG § 3B1.1(c) for an Aggravating Role. (*Id.*) Although there is some

---

[3] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/201811_fed-sentencing-basics.pdf.

interrelation between Guidelines, as Petitioner-Defendant points to in his motion, he is wrong to conclude that his sentence range was improperly calculated.

Petitioner-Defendant correctly notes that Amendment 750 created a "new specific offense characteristic . . . providing an enhancement of 2 levels if the defendant receives an adjustment under § 3B1.1 (Aggravating Role) and the offense involved one or more of five specified factors," but this enhancement was not factored into his Guidelines calculations, which were based off the quantities of heroin involved in the underlying conduct for Count 1 and did not include any enhancements for specific offense characteristics. (PSR ¶ 22; See also USSG § 2D1.1(a)(5), (b)(15), (c)(5) (2016).)

As articulated by the Supreme Court in its *Gall v. United States* opinion, which built upon the *Booker* and *Rita* decisions, the Guidelines are advisory and, in setting a "reasonable" sentence, a court "may not presume that the Guidelines range is reasonable" and "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 46, 50 (2007), (*citing United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 551 U.S. 338 (2007)).

According to 18 U.S.C. § 3553(a), sentencing courts "shall impose a sentence sufficient, but not greater than necessary" to further the goals of just punishment, adequate deterrence, protection of the public, and needed educational or vocational training, medical care, or other correctional treatment for the defendant. 18 U.S.C.

§ 3553.  The sentence imposed in this case reflected the Court's careful consideration of all these factors.

### III.  Ineffective Assistance of Counsel

Petitioner-Defendant claims three separate grounds for relief:  (1) ineffective assistance of counsel, (2) ineffective counsel during the sentencing phase, and (3) ineffective assistance of counsel during pretrial proceedings.  (Doc. No. 139.)  All three grounds will be addressed by the analysis below.

Every criminal defendant has a constitutional right, guaranteed by the Sixth and Fourteenth Amendments, to effective counsel at trial and sentencing.  *Strickland v. Washington*, 466 U.S. 668, 706 (1984); *Wooten v. Norris*, 578 F.3d 767, 781 (8th Cir. 2009).  The Eighth Circuit follows the two-part *Strickland* test for reviews claims of ineffective counsel; to succeed in his claim, Petitioner-Defendant must show that Attorney Mohammad's performance was unreasonably deficient, and that Petitioner-Defendant "suffered such prejudice from the deficient performance there is a reasonable probability the result would have been different."  *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014).  This circuit has rejected a *per se* rule of ineffective assistance when a defendant is represented by a "trained and qualified attorney" who has been suspended or disbarred.  *Bear v. United States*, 777 F.3d 1008, 1011 (8th Cir. 2015) (internal citations omitted).  A court does not need to determine whether an attorney's performance was deficient before examining the issue of whether the defendant suffered

any prejudice "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Nelson v. United States*, 909 F.3d 964, 970 (8th Cir. 2018).

Petitioner-Defendant alleges that he received ineffective assistance of counsel because when he discussed the 2-level increase to his offense level as described in the Plea Agreement with Attorney Mohammad, he was told to "just take it, it won't make a difference." (Doc. No. 140 at 4.) Petitioner-Defendant also alleges that Attorney Mohammad failed to object to erroneous Guidelines calculations. (*Id.* at 7.) He further claims that his attorney told him he would only be sentenced to the mandatory minimum term (*id.* at 3-4), and that he "had never seen the [Aggravating Role enhancement] before he signed the plea" and "only answered the [C]ourt in the affirmative regarding that provision because his attorney advised him that because of the statutory mandatory minimum the characterization was immaterial" (Doc. No. 171 at 2). Finally, Petitioner-Defendant claims that Attorney Mohammad misinformed him that the Government's burden, were this matter to go to trial, would be merely to prove their case by "clear and convincing" evidence, and had he been accurately apprised he would have exercised his right to a trial. (Doc. No. 140 at 8.)

Close scrutiny of the record before this Court, including a careful review of the procedural history, shows that the facts do not support Petitioner-Defendant's claims. Attorney Mohammad's admitted misconduct is dismaying, and this Court is sympathetic to Petitioner-Defendant's concerns that he received deficient counsel. It is unfortunate

that Attorney Mohammad failed to respond to the allegations against him, but his input is not necessary to weigh the credibility of Petitioner-Defendant's claims— he counters his own allegations through his contradictory statements.

Attorney Mohammad did argue, through his written submissions and oral arguments, that Petitioner-Defendant deserved the minimum sentence. As discussed above, Petitioner-Defendant is mistaken in his understanding of the Guidelines range in his case. Most importantly, Petitioner-Defendant's contention that he was deprived of the chance to review the entire Plea Agreement before entering his guilty plea is belied by his statements in court.[4] In particular, Petitioner-Defendant argues that even though he acknowledged the Plea Agreement included a 3-level Aggravated Role enhancement to his offense level pursuant to Chapter 3 of the Guidelines (Plea Hearing at 10), he "had never seen the provision before he signed the plea" (Doc. No. 171 at 2). The record shows that Petitioner-Defendant signed the Plea Agreement before the hearing on June 21, 2016 began. (Plea Hearing at 5.) As detailed at length above, Petitioner-Defendant was advised of the mandatory and the potential outcomes of such action before he entered his guilty plea. He did nothing to indicate confusion or surprise during his hearing when the subject of his offense level calculations was discussed, and

---

[4]     Petitioner-Defendant implies that a docket entry dated July 1, 2016 shows that page 4 of the Plea Agreement, which includes discussion of the 3-level increase to his offense level for his aggravated role in the offense, was missing at the time he entered his plea. (Doc. No. 171 at 2-3.) This docket entry reflects an oversight in filing and sheds no light on the condition of the document Petitioner-Defendant reviewed during the hearing.

he did not speak with his attorney between the time that the offense level increase was first mentioned and when he answered that he understood it. (Plea Hearing at 10.) It cannot be true that he both had a conversation with his attorney about the increase (during which he was ill-advised) and that did not see the calculations before stating he understood them. His claims that he was unaware of the Government's burden of proof further defy belief when viewed in light of his sworn statements. A defendant can show prejudice by showing a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," but "courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Dat v. United States*, No. 17-3652, 2019 WL 1562570, at *2 (8th Cir. Apr. 11, 2019) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (internal quotations and punctuation omitted). The record before this Court directly contradicts Petitioner-Defendant's version of events and establishes that his allegations are incredible.

Crucially, Petitioner-Defendant has failed to show prejudice. He was notified accurately and completely of the mandatory minimum sentence he faced, and admitted in his Plea Agreement that the Government could prove Count 1. His sentence falls within every Guidelines range contemplated, he received the benefit of a departure and a variance, and the record clearly shows that this Court considered his individual traits and

circumstances as required by 18 U.S.C. § 3553(a).  Petitioner-Defendant has failed to show that he is entitled to the relief requested.

## EVIDENTIARY HEARING

Based on the record before the Court, there is no reason for the Court to further explore any credibility issues with respect to Petitioner-Defendant's claims.  A § 2255 motion can be dismissed without a hearing when:  (1) defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact.  *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998).  Applying that standard to the Petitioner-Defendant's allegations and the record before the Court, the Court concludes that no evidentiary hearing is required in this case.

## CERTIFICATE OF APPEALABILITY

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1).  A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).

The Court has considered whether the issuance of a COA is appropriate.  *See Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997).  In that context, the Court concludes that no issue raised is "debatable among reasonable jurists."  *Flieger v. Delo*, 16 F.3d 878, 882 83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432 (1991)

(per curiam)).  Petitioner-Defendant has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA.  28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court finds that the record in this case forecloses any notion that Petitioner-Defendant received ineffective assistance of counsel at either the pretrial or sentencing stages of proceedings.  Based upon the presentations and submissions of the parties, the Court having again carefully reviewed the record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Petitioner-Defendant Raymond K. Walker's *pro se* Motion to Vacate, Set Aside or Vacate Sentence and Conviction Judgment Pursuant to 28 U.S.C. § 2255 (Doc. No. [139]) is respectfully **DENIED**.

2.      Petitioner-Defendant's *pro se* Motion for Summary Judgment (Doc. No. [157]) is respectfully **DENIED**.

3.      Petitioner-Defendant's self-styled *pro se* Motion to Correct Misapprehension of Facts Contained Withen [sic] 2255 Motion for Post Conviction Relief (Doc. No. [171]) is respectfully **DENIED**.

4.     No evidentiary hearing is required in this matter.

5.     No Certificate of Appealability will be issued to Petitioner-Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  May 17, 2019                              s/Donovan W. Frank
                                                 DONOVAN W. FRANK
                                                 United States District Judge