## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 16-33(1) (DWF/LIB) |
| Respondent-Plaintiff, | Civil No. 18-499 (DWF) |
| v. | |
| Raymond K. Walker, | **MEMORANDUM OPINION AND ORDER** |
| Petitioner-Defendant. | |

---

Raymond K. Walker, Petitioner-Defendant, *Pro Se*.

Bradley M. Endicott and Deidre Y. Aanstad, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

---

## INTRODUCTION

This matter is before the Court on Petitioner-Defendant Raymond K. Walker's ("Walker") *pro se* motion for release in light of the COVID-19 pandemic.[1] (Doc. No. 189 ("Motion").) The United States of America (the "Government") opposes Walker's Motion. (Doc. No. 192.) For the reasons discussed below, the Court respectfully denies Walker's Motion.

---

[1] The Court construes Walker's Motion as a request under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release"). As discussed below, the Court finds that Walker's Motion fails under either analysis.

## BACKGROUND

On June 21, 2016, pursuant to a written plea agreement (Doc. No. 78-1 ("Plea Agreement")), Walker entered a plea of guilty to Count 1 of a five-count indictment (Doc. No. 1). Count 1 charged Walker with Conspiracy to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. According to the Plea Agreement, Walker conspired to distribute 2.4 kilograms of heroin and was a leader/organizer/supervisor in the criminal activity. (Plea Agreement.)

On February 21, 2017, this Court sentenced Walker to 132 months' imprisonment to be followed by 5 years of supervised release. (Doc. Nos. 131, 132). Walker is now incarcerated at FCI Oxford in Wisconsin. According to the Bureau of Prisons (BOP), Walker's release date is November 26, 2025. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed May 12, 2020).

Walker asserts that he is vulnerable to COVID-19 because he has "minor respiratory issues" due to gaining 65 pounds in prison and argues that he is eligible for release pursuant to the CARES Act. (Motion.)

## DISCUSSION

**I.    The CARES Act**

The First Step Act ("FSA") was enacted into law on December 21, 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194. As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007. *See* 18 U.S.C. § 3624(c)(1).

In its previous form, § 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter.  18 U.S.C. § 3624(c)(2). Now, as amended, § 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."  *Id.*; FSA § 602. Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment."  18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations.  The BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, starting with the inmates incarcerated at facilities that have experienced COVID-19 cases (FCI Oakdale, FCI Danbury, FCI Elkton) and similarly-situated facilities to determine which inmates are suitable candidates for home confinement.  BOP Update on COVID-19 & Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (Last accessed May 12, 2020).

As noted above, the BOP has exclusive authority to determine the placement of prisoners. *See* 18 U.S.C. § 3624(c)(2). Neither the CARES Act nor the FSA alters this authority. *See United States v. James*, Cr. No.15-255 (SRN) 2020 WL 1922568 at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287 at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst.*, Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Moreover, Courts have consistently held that placement questions are not reviewable. *See*, e.g., 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine [defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP"); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025 at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Warden*, Civ. No.

3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019). Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement." *James*, 2020 WL 1922568 at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

In short, because home confinement is a place of confinement the Court finds that it is solely within the BOP's discretion to dictate. *See* 18 U.S.C. § 3624(c). Accordingly, to the extent Walker seeks release to home confinement pursuant to the CARES Act, the Court respectfully denies his Motion because it lacks the authority to consider his request.

## II.     Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier . . . ."[2] *Id.* The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *Id.*

Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission determined that "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. USSG § 1B1.13.

Here, the record does not reflect that Walker has exhausted his administrative remedies. Accordingly, the Court must deny his Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) because it lacks authority to consider his request. *See, e.g.*, *United States v. Kluge*, Cr. No. 17-61, 2020 WL 209287 at *4 (D. Minn. Jan. 14, 2020); *United States v. Roy*, Cr. No. 15-303, 2019 WL 6190069 at *1 (D. Minn. Dec. 19, 2019); *United States v. Gutierrez*, Cr. No. 01-331, 2019 WL 8219448 at *3 (D. Minn. Nov. 6, 2019).

Even if the Court had the authority to consider Walker's Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds that it also fails on the merits because Walker

---

[2]     While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995)

does not present an extraordinary and compelling reason to warrant release. Currently, FCI Oxford has no reported cases of the COVID-19 virus. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last accessed May 12, 2020). Moreover, there is no indication that FCI Oxford will be unable to handle an outbreak or accommodate Walker's specific health concern.[3] While the Court understands the gravity of the COVID-19 pandemic and is mindful of Walker's concerns, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release. Accordingly, the Court respectfully denies Walker's Motion.

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks authority to consider Walker's Motion under the CARES Act because home confinement is solely within the BOP's discretion to dictate. The Court also finds that Walker is ineligible for Compassionate Release because he fails to satisfy the mandatory exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) and because he does not present an extraordinary and compelling reason to warrant release.

---

[3]     Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accesses May 12, 2020). Those steps include a limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates. (*Id.*) Current measures also include a 14-day isolation period, and limited group gatherings. *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed May 12, 2020).

**ORDER**

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner-Defendant Raymond K. Walker's *pro se* Motion for Release (Doc. No. [189]) is respectfully **DENIED**.

Date:  May 14, 2020                             s/Donovan W. Frank
                                                DONOVAN W. FRANK
                                                United States District Judge